UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ASHLEY SEVERTSON,<br><br>                    Plaintiff,<br><br>          vs.<br><br>UNITED STATES OF AMERICA; U.S. DEPARTMENT OF AGRICULTURE FOREST SERVICE, a federal division; CHRISTOPHER KUYKENDALL, USFS Law Enforcement Officer; DEVIN GUICE, USFS Law Enforcement Officer.<br><br>                    Defendants. | Case Number:<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Ashley Severtson, by and through her attorneys, Hannah Silverman and Willow Hillman, do hereby state and allege as follows:

## NATURE OF THE ACTION

1.

This is a civil action challenging violations of (i) Ashley Severtson's constitutional right to be free from unreasonable search and seizure, (ii) her right to not be unlawfully detained, and (iii) her right to be free from the use of excessive force; all arising from an incident on September 29, 2023, when, as Ms. Ashley Severtson was walking to her vehicle with her personal property and her large dog on-leash from the Cougar Hot Springs, as ordered by law enforcement,

   (a) Officer Christopher Kyukendall walked from one end of the parking area towards Ms. Severtson at the other end of the parking area,

   (b) Drew his taser and aimed it at Ms. Severtson, as Ms. Severtson pulled her on-leash dog closer to herself,

PAGE 1 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

1    (c) Continued to aim his Taser at Ms. Severtson and tell her that she was not under arrest but needed

2        to place her hands behind her back to be detained,

3    (d) Officer Devin Guice and Officer Kyukendall surrounded Ms. Severtson and walked her

4        backwards into the road,

5    (e) Officer Guice closed distance and grabbed Ms. Severtson's arms,

6    (f) When Ms. Severtson did not drop the leash of her dog and her personal property to put her

7        hands behind her back, Officer Kyukendall then holstered his taser,

8    (g) Officer Kyukendall gripped Ms. Severtson's upper arm and performed a leg sweep to knock Ms.

9        Severtson to the ground,

10   (h) Officer Guice attempted to get on top of Ms. Severtson in a prone position but was unsuccessful,

11   (i) Officer Kyukendall moved away from Ms. Severtson three to four feet and deployed his taser into

12       Ms. Severtson's left quadricep area,

13   (j) Deployed a second cartridge,

14   (k) Deployed a third cartridge while Ms. Severtson was in handcuffs and detained,

15   (l) Slammed Ms. Severtson against the front of his car,

16   (m) Officer Kyukendall told Officer Guice to search Ms. Severtson while she was in her bikini

17       swimsuit,

18   (n) Transported Ms. Severtson to jail in her bikini swimsuit,

19   Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and such other and

20   further relief as the Court deems just and proper.

21                              **JURISDICTION AND VENUE**

22                                        2.

23       This is a civil rights action arising from the excessive and unreasonable use of force used against Ms.

24   Severtson on September 29, 2025.

25                                        3.

26       Plaintiff, Ms. Severtson, sues Defendants United State Department of Agriculture Forest Service

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

("USFS"), Officer Christopher Kyukendall, and Officer Devin Guice under the Federal Tort Claims Act ("FTCA"), *Bivens v. Six Unnamed Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971), and its progeny.

4.

The Court is authorized to hear the Plaintiff's constitutional claims against the individual Defendants by *Bivens* and its progeny.

5.

U.S. Department of Agriculture Forest Service is a Federal Agency under the supervision of the United States.

6.

Officer Kyukendall and Officer Guice, on information and belief, each has engaged in substantial and not isolated activities within the State of Oregon as members of the U.S. Department of Agriculture Forest Service Law Enforcement Division.

7.

Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (2) because all defendants are located within this district, and the events or omissions giving rise to the claim occurred within this district.

**PARTIES**

8.

Plaintiff, Ashley Severtson; at all times relevant to this action, Ms. Severtson was a citizen of Oregon.

9.

Defendants, Officer Kyukendall and Officer Guice were sworn law enforcement officers employed by the USFS and acted within scope of employment and under color of law.

10.

Defendant, USFS is a federal division, a political subdivision under Defendant United States of America, and is a public body liable for the acts and omissions of members of the law enforcement division and other agents and employees acting within the scope of their agency and/or employment.

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

11.

Plaintiff, Ashley Severtson, is informed and believes and thereon alleges that, at all times relevant to this Complaint, each Defendant was the agent and/or employee of each other Defendant and was at all times acting within the scope of such agency and/or employment.

**ALLEGATIONS COMMON TO ALL CLAIMS**

13.

On September 29, 2023, Ms. Ashley Severtson, Plaintiff, was enjoying Cougar Hot Springs with a friend and many strangers. There were approximately 12 vehicles parked at the trail head parking lot to Cougar Hot Springs. The parking lot is located roughly a quarter of a mile away from the trail head and, most importantly, is located on the opposite side of the road. Cougar Hot Springs is a public space within the National Forest. At Cougar Hot Springs there is a curfew imposed between sunset and sunrise.

14.

It is on information and belief, Officer Christopher Kyukendall was the Field Training Officer riding with Officer Devin Guice. Officer Guice was in the Phase II Field Training Program (FTEP) with the U.S. Forest Service Department.

15.

Officer Kyukendall and Officer Guice informed all individuals in the hot springs that it was after sunset, and they must vacate the premises. Individuals left at staggered rates.

16.

Ms. Severtson and her friend, Mr. Stephen Breitzman were among the last individuals to leave the Hot Springs. They emerged out of the woods on the trail they walked the path along the road. Ms. Severtson and Mr. Breitzman crossed the road and started walking to their vehicle in the designated parking area.

17.

As Officer Kyukendall saw Ms. Severtson and Mr. Brietzman walking in the parking area, Officer Kyukendall told Officer Guice, "we are not paid to take abuse" and "get ready to move fast if we need to".

18.

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

1    Officer Kyukendall then called out to Ms. Severtson to come closer to the vehicle. Ms. Severtson

2    agreed and asked officers to turn off the overhead flashing lights due to her epilepsy. Officer Guice relayed

3    this request to Officer Kyukendall who refused to turn off the overhead lights.

4                                                19.

5    During the back and forth about the overhead lights, Officer Kyukendall told Officer Guice to "take

6    control of this or I will".

7                                                20.

8    Officer Guice then closed distance towards Ms. Severtson. Ms. Severtson asked numerous times why

9    she was being arrested. Neither Officer responded.

10                                                21.

11    Officer Kyukendall then pulled his taser out of the holster and aimed it at Ms. Severtson. Officer

12    Kyukendall then told Ms. Severtson she was being detained for trespassing. Both Officers told Ms. Severtson

13    she was not under arrest yet continued to attempt to surround her and walked her backwards from the

14    parking area and into the road.

15                                                22.

16    Officer Kyukendall then told Officer Guice multiple times to "go hands on" while closing distance

17    with his taser pointed at Ms. Severtson. Officer Guice then contacted Ms. Severtson and grabbed her by the

18    arm.

19                                                23.

20    Officer Kyukendall then holstered his taser and grabbed Ms. Severtson by the upper arms and assisted

21    Officer Guice in performing a leg sweep to take Ms. Severtson to the ground.

22                                                24.

23    Officer Guice was on top of Ms. Severtson. Officer Kyukendall created distance between himself and

24    Ms. Severtson and deployed his taser. Ms. Severtson screamed and declared that she had been shot and was

25    bleeding.

26                                                25.

PAGE 5 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

1    Officer Kyukendall then deployed a second cartridge on his taser. At the time, Ms. Severtson's hands

2    were completely visible. Ms. Severston was only wearing a bikini swimsuit with a bag and was holding her

3    dog's leash.

26.

4    

5    Officer Guice was still on top of Ms. Severtson and grabbed Ms. Severtson's arms.

27.

6    

7    Officer Kyukendall deployed a third cartridge on his taser.

28.

8    

9    Both Officers pulled Ms. Severtson up by her arms despite Ms. Severtson asking them to allow her to

10    help herself up due to back and shoulder injuries.

29.

11    

12    Ms. Severtson requested medical assistance immediately.

30.

13    

14    Officer Kyukendall and Officer Guice walked Ms. Severtson to the front of the patrol vehicle where

15    they slammed her against the front of the vehicle. Officer Kyukendall then told Officer Guice to search Ms.

16    Severtson in her bikini swimsuit and Officer Kyukendall walked to the back of the patrol vehicle.

31.

17    

18    Officer Kyukendall requested medical assistance and indicated that Ms. Severtson has been tased two

19    times.

32.

20    

21    Ms. Severtson was held in the back of the vehicle for 30 minutes with audible and physical signs of

22    pain and discomfort. Ms. Severtson was crying, calling out for help, exclaiming neck and head pain, and

23    vomiting.

33.

24    

25    Eventually, the fire department EMT arrived on scene and did an initial assessment of Ms. Severtson

26    while she was buckled in the back of the car. Ms. Severtson continued to tell authorities that she was in pain

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

1 and needed to lay down, to which she was denied.

36.

Ms. Severtson continued to ask Officer Kyukendall to turn off the overhead lights and in-cabin lights due to her current condition and epilepsy. Officer Kyukendall denied Ms. Severtson's requests.

34.

Officer Kyukendall then told Officer Guice to meet him behind the vehicle for an admonishment.

35.

Officer Kyukendall told Officer Guice; "[w]hen I say 'go hands on', I mean go fucking hands on. Don't keep waiting and waiting and waiting. You forced that tase to happen and it didn't have to."

36.

For over an hour, Ms. Severtson was hand cuffed, and seat belted into the back of the police vehicle, unable to lay down and unable to cover her face from the lights in the interior of the cab. Ms. Severtson repeatedly asked officers to turn off the light due to the migraine she sustained from the fall and taser. Repeatedly, Officer Kyukendall denied her requests to turn off the light or allow her to lay down.

37.

Under Section 54. Use of Force, the USFS Law Enforcement Policy Manual belabors the evaluation of the reasonableness of a situation under the totality of circumstances when determining whether use of force, and what degree of force, for a situation is acceptable. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 60. The manual further cites the "Graham Factors" such as: "1.) The severity of the crime at issue, 2.) Whether the suspect poses an immediate threat to the safety of the Officers or others, 3.) Whether the subject is actively resisting arrest, or 4.) Whether the subject is attempting to evade arrest by flight." *Id.* Additionally, the manual lays out that reasonableness of using a particular level of force can include "1.) Size and physical abilities of law enforcement personnel and the subject. ... 5.) The presence of innocent bystanders who could be harmed. 6.) Exigent conditions, including the number of law enforcement personnel and subjects

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

1  involved, and availability of back-up." *Id.* at 60-61.

2                                              38.

3         It was not objectively reasonable for Officer Kyukendall to deploy his taser in this situation. Officers

4  were on scene for an investigation into the crime of trespass, a class C misdemeanor. Ms. Severtson did not

5  pose an immediate threat to the safety of Officer Guice or Officer Kyukendall as she was much smaller in

6  stature and size than both officers and wearing a revealing swimsuit. Ms. Severtson was not actively resisting

7  arrest but was requesting the flashing lights be turned off due to her epilepsy and asking why she was being

8  approached by law enforcement. Once Officer Kyukendall used physical force to sweep Ms. Severtson's legs

9  out from under her and take her to the ground, Officer Guice was on top of her. There were no objectively

10  reasonable grounds for Officer Kyukendall to deploy his taser three times. At no point was Ms. Severtson

11  actively attempting to evade arrest by flight. Both officers were substantially larger than Ms. Severtson, there

12  were no innocent bystanders, and frankly no other members of the public around during the interaction.

13  This use of force was not objectively reasonable by Officer Kykendall's own statements to Officer Guice when

14  he stated "[y]ou forced that tase to happen and it didn't have to."

15                                              39.

16        The manual proceeds to lay out the policy for Officers to abide by when the use of Electronic Control

17  Devices, such as tasers, are used. Section 54.32 – Electronic Control Devices, USFS Law Enforcement Policy

18  Manual p. 64. Under subsection 2, Deployment and Aftercare, officers are required to take the subject to an

19  emergency care facility when the subjects are high risk (known medical conditions), such as epilepsy, and if

20  the subject requests medical treatment. *Id.* at 65. Further, under subsection 3, Post deployment evidence

21  collection,

22             "[a]fter an ECD deployment against a suspect, the scene should be photographed prior to

23         evidence collection. Evidence should be collected to include spent cartridges(s) with wires still

24         attached, and the probes if reasonably possible. ... When lawful and safe to do so, photographs should

25         be taken of the impact area and any other injuries that occurred."

26                                              40.

PAGE 8 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

Despite knowing of Ms. Severtsons medical condition of epilepsy, and her repeated request for medical attention, Officer Kyukendall and Officer Guice waited for various other emergency services to come to their location. They failed to take her to a medical center until over an hour had passed from the time the ECD was deployed. While they were waiting on scene for other emergency services to respond, at no point did Officer Kyukendall or Officer Guice take any photos of the scene, the spent cartridges, the probes, or the impact area and injuries that occurred on Ms. Severtson.

41.

Additionally, the manual goes into further detail about the importance of photographing injuries to the suspect after the use of force. Section 54.36 Photographic Documentation, the USFS Law Enforcement Policy Manual, p. 67. The manual explicitly states, "[a]ny time an officer uses force, photographs of the suspect and injuries shall be taken. These photographs shall be included in the report to be submitted. If the suspect is transported to the hospital, a copy of the discharge paperwork shall be submitted to the correctional facility prior to booking." The manual does not explicitly indicate what level or type of force used requires photography of injuries, thus, it is clear that any and all use of force must include documentation of injuries to the suspect.

42.

Officer Kyukendall and Officer Guice failed to take any photographs of the injuries sustained by Ms. Severtson despite the three ECD deployments and the physical take down of Ms. Severtson. There were no photos taken and thus, no photos accompanied by their report, despite the clear language that this is mandatory. Furthermore, there was no copy of the hospital discharge paperwork with either of their reports, and no information written within the reports attesting to the injuries sustained by Ms. Severtson.

43.

As of September 29, 2023, it was clearly established that under the Fourth Amendment people have the right to be free of unreasonable search and seizure of themselves and their property in addition to unreasonable use of force.

44.

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

1    The need to train police officers to understand (i) the rights of persons implicated by searching and

2    seizing their persons under the Fourth Amendment; (ii) the right to be secure from unreasonable use of force;

3    were clear at the time of the September 29, 2023, incident with Ms. Severtson.

45.

5    It was clear, both before and on September 29, 2023, that failure to properly train police to

6    understand, preserve, and protect privacy rights under the Fourth Amendment would make violation of this

7    constitutional right likely, as would maintenance of, or indifference to, policies, customs, or practices

8    inconsistent with the Fourth Amendment.

46.

10    It was predictable that improper training on the Fourth Amendment would lead to an incorrect

11    understanding of those rights (such as the unreasonable force implemented on an unlawful search and seizure

12    arising from a misdemeanor) which would result in searches and seizures that were unreasonable under the

13    Fourth Amendment.

47.

15    The USFS failed to adequately train and supervise Officer Kyukendall and Officer Guice before and

16    during the incident that allowed and condoned the acts and omissions of the police during the incident, and

17    which showed deliberate indifference to the rights of Ms. Severtson under the Fourth Amendment to the

18    United States Constitution that defendants violated on September 29, 2023.

48.

20    At all material times, the acts or omissions of each individual Defendant were grossly negligent,

21    objectively unreasonable, intentional, wanton, willful, reckless, malicious, and constituted a deliberate

22    indifference to Ms. Severtson's rights.

49.

24    As a result of the foregoing, Ms. Severtson suffered a wide range of physical, mental and emotional

25    harm including but not limited to:

26        a)  Post-Traumatic Stress Disorder

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

b)  Headaches

c)  Nausea

d)  Difficulty breathing

e)  Bruising

f)  Scarring from wounds

g)  Panic Attacks

h)  Acute and sustained fear of police contact

i)  Tension and body aches; and

j)  Physical pain.

## FIRST CLAIM FOR RELIEF

### Deliberate Indifference to Ms. Severtson's Constitutional rights – *Bivens* Claim

50.

Plaintiff incorporates and re-alleges Paragraphs 1-49, above, as though each were set forth herein in full.

51.

By using excessive force when performing a stop for a minor crime, Officer Kyukendall and Officer Guice violated Ms. Severtson's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution.

52.

At all times relevant to the allegations in this complaint, Officer Kyukendall and Officer Guice were on-duty police officers acting under color of law.

53.

Under the Fourth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment to the United States Constitution, Ms. Severtson has a right to be secure in her effects, free from unreasonable searches and seizures, and free from the use of unreasonable force.

54.

PAGE 11 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

1    In the detention for a violation and subsequently utilizing unreasonable force, Officer Kyukendall

2    and Officer Guice violated Ms. Severtson's clearly established Fourth Amendment rights under the United

3    States Constitution, of which Officer Kyukendall and Officer Guice knew, or of which reasonable police

4    officers should have known.

5                                                          55.

6    Officer Kyukendall and Officer Guice, acting or purporting to act in performance of their official

7    duties as law enforcement officers, caused Ms. Severtson to suffer injuries that would dissuade a person of

8    ordinary firmness from continuing to engage in public activities.

9                                                          56.

10   As a direct and proximate result of Officer Kyukendall's unconstitutional violations of Ms.

11   Severtson's Fourth Amendment rights, Ms. Severtson suffered injuries, including without limitation, physical

12   and psychological injuries; non-economic damages; and loss of liberty.

13                                                         57.

14   As a direct and proximate result of Officer Kyukendall's failure to intervene and subsequent

15   assistance to Officer Guice in violating Ms. Severtson's Fourth Amendment rights, Ms. Severtson suffered

16   injuries, including without limitation, physical and psychological injuries.

17                                                         58.

18   The actions of Officer Kyukendall and Officer Guice, as described in this complaint, were deliberate,

19   intentional and embarked upon with the knowledge of, or in conscious disregard of, the harm that would

20   be inflicted against Ms. Severtson.

21                                                         59.

22   By using excessive force when performing a stop for a minor crime, Officer Kyukendall and Officer

23   Guice violated Ms. Severtson's clearly established rights under the Fourth and Fourteenth Amendments to

24   the United States Constitution.

25                                                         60.

26   On information and belief, as of September 29, 2023, U.S. Department of Agriculture Forest Service

PAGE 12 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

1  Law Enforcement maintained official policies requiring officers to endeavor other methods prior to using

2  force, to only use force when reasonably necessary, and that force may be used in situations that are tense,

3  uncertain, and rapidly evolving.

61.

5  On information and belief, as of September 29, 2023, U.S. Department of Agriculture Forest Service

6  failed to supervise or enforce training practices for their officers that aligned with their maintained policies.

62.

8  On information and belief, as of September 29, 2023, U.S. Department of Agriculture Forest Service

9  maintained these training practices and failed to supervise and discipline Law Enforcement Officers for

10 unlawfully interfering with the Fourth and Fourteenth Amendments of the Unite States Constitution,

11 displaying deliberate indifference to the constitutional rights enjoyed by all persons in the United States.

63.

13 As a direct and proximate result of the failure to supervise and discipline the Law Enforcement

14 Officers of the U.S. Department of Agriculture Forest Service, Ms. Severtson suffered injuries including

15 without limitation physical and psychological injuries; non-economic damages; and loss of liberty. As a result

16 of those injuries Ms. Severtson is entitled to at least compensatory damages in an amount to be ascertained

17 according to proof at trial.

64.

19 Ms. Severtson is entitled to declaratory relief, including a declaration stating his rights were violated,

20 and an injunction requiring defendants to revise training requirements to be consistent with the Fourth and

21 Fourteenth Amendments with respect to persons committing minor infractions, search and seizure and use

22 of force, and to recognize, uphold and protect the right against the use of unnecessary force.

65.

24 Based on Officer Kyukendall and Officer Guice's conduct; Ms. Severtson is entitled to an award of

25 damages, injunctive relief, and declaratory relief.

26 66.

PAGE 13 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

Based on Officer Kyukendall and Officer Guice's conduct; Ms. Severtson is entitled to compensatory in an amount to be ascertained according to proof at trial.

67.

Officer Kyukendall and Officer Guice are not entitled to qualified immunity because the rights of Ms. Severtson that were violated were clearly established at the time of the conduct, including without limitation her right to be free from unreasonable search and seizure of her person and her property.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief from this court as follows:

1.  Assume jurisdiction in this matter over plaintiff's claims;

2.  That Defendants be served with this Complaint and that upon final hearing, Plaintiff have judgment on these claims in amounts consistent with the court or jury's determination of fair compensation plus punitive damages, and other expenses, and whatever legal or equitable relief the Court may deem appropriate, just and proper as well as, this Court enter judgment against Defendants, and each of them, as follows:

    a.  Award plaintiff's economic and non-economic damages against defendants in amounts to be determined at trial in accordance with the allegations set forth above;

    b.  Compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life;

    c.  Punitive damages against individual defendants only in an amount according to proof (on the Bivens claims only);

    d.  Pre- and post-judgment interest as allowed by law; and

    e.  Grant such other further relief as the Court deems just and proper.

PAGE 14 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WHEREFORE, Plaintiff demands, a jury trial and the following relief jointly and severally against defendants to the full extent allowed by law; compensatory damages in an amount to be determined by a jury; punitive damages in an amount to be determined by a jury; costs, interests and attorney fees; such other and further relief as this court may deem just and proper, including injunctive and declaratory relief.

DATED this *23rd* day of September, 2025.

BOENDER & PAYMENT, ATTORNEYS

By:        */s/ Hannah Silverman*
Hannah Silverman, OSB #204965
hannah@oregonattys.com
Willow Hillman
willow@willowhillmanlaw.com
Attorneys for Plaintiff Ashley Severtson

PAGE 15 of 15 — **PLAINTIFF'S COMPLAINT – (CIVIL RIGHTS)**

BOENDER & PAYMENT, ATTORNEYS
800 Willamette St., Ste. 700
Eugene, OR 97401
Voice (541) 685-1288 Fax (541) 653-8224